As the Court knows, Mr. Russell was awarded an arbitration award for his crop insurance claims for the 2013 crop year. He was awarded a very specific award. The arbitration panel awarded him all of his corn claims in Holt, Atchison, and Nottoway Counties. Similarly, the panel denied all of his soybean claims, saying they didn't find that he showed durable loss on his soybean claims for Holt, Atchison, and Nottoway Counties. This matter was appealed by Great American to the District Court, claiming that because the award was not specifically stated as a damage award for each county, that it did not provide a full and final decision that allows the Court to figure out how in fact they made their decision. There was a motion to reconsider filed asking the Court to modify or clarify the ruling and either break down the award on a per-unit basis or remand it back to the arbitration panel to do so, and the Court refused to do that. Both of those decisions are what we're appealing today. Now on a lot of the cases we've been hearing this morning, there have been arguments about facts about facts about facts. This one is strictly illegal. That said, the first thing I'm going to tell you is facts. These are undisputed facts, and I think that they're very important. There is no dispute on the award. There is no dispute on the amount. There is no dispute that Mr. Russell proved an insurable loss on all of his corn claims in Holt, Nottoway, and Atchison County, Missouri. Counsel, let me ask you. How many claims were originally filed, and were they collapsed into one claim, and can you explain that? Sure, and that is something I do want to talk about. They were, if you look at the record, I'm not going to count on the exact number of units there were. The way crop insurance works is you can insure all your farms in one county, or you can specify each individual farm. Originally this was specified as an individual farm. Now what happened was when Great American denied his claim, they collapsed all of them into one for one of their reasons for denial, which was that he failed to maintain adequate records. When you say collapsed into one, I'm sorry to interrupt, but you mean one claim? Yes. If you look at it, I think the ruling addresses it from the panel direct, says in, I think it's the bottom of the first page, start of the second page. It's on page 35 and 36 of the appendix. They specifically state that Great American collapsed all of his claims into one. To follow up on Judge Graza's question then, when the regulation requires the arbitrator to provide a written statement describing the issues and then breaking down by claim the award, for any award, where do we look to for claim? Are we talking about the collapsed claim that Great American identified or you, as you mentioned early in your argument, there were multiple claims. A claim for the corn on each county, each of the three counties. When we look to break down by claim, where do we look for that? Certainly. It is a matter of some interpretation, and I know counsel doesn't like that word, but when they addressed his claim at the outset, when addressing it, they collapsed all of his claims into one for the purposes of denying his claim on the basis that he did not maintain adequate records. In terms of the provision of evidence to the panel, it was provided in terms of the claims for the corn claims on the counties. The panel awarded on the unit basis on these counties. The panel specifically said we award Russell on all of his corn claims in Holt, Atchison, and Nottowick Counties. But now you're using the word claims, so I'm trying to sort of maneuver through when we have a claim and when we need to deal with multiple claims. Understood. In terms of the collapse, I think that the actions of Great American, collapsing this into one claim, makes it one claim. And so if that is the approach, then the analysis is over. The panel specifically did what the policy requires. However, in the alternative, I think the panel did what the policy requires, even if they did it on a county-by-county basis. Because if you look at what the policy requires, it says you have to say the amount, the basis for the award, and a breakdown by claim. All of those were done here on a claim on a county-by-county basis. When you say policy, are you talking about the regulation or the actual policy, the insurance policy? I'm talking about the actual, I'm talking about the regulation, sorry. In that regard, there's an exhibit, I think it's exhibit K or document 18-11, it's a chart showing the calculation of the losses, and it's by county. Was that submitted by Mr. Russell to the panel, and is it in the record, does all the parties have that? It was not provided to them. The simple truth of this, and I think this is very important, because what we're talking about here is a situation where the district court made a finding that the award was not specific and not definite, simply because they threw everything into a final number. This is very, very, simple is not the right word, but very easily calculated. There's not a dispute about the amount. But they didn't, a minute ago, I thought you just said that the panel broke it down by county. The panel awarded, they didn't break down the damages, that's correct. Okay. Doesn't the regulation require that? I don't think so. So wait a minute, how does the policy of the regulation, how does it define claim? By county? In terms of the breakdown by claim, again, if the breakdown is by county, it can be both is kind of the problem here. In terms of what Great American did, at the outset, is they made it one claim. If it could always be one claim, how could you ever break it down? And wouldn't the regulation be kind of nonsensical? No. For example, if he had proved, say for example, he proved his claim on only one farm, then I think it would be required to say, you proved it on this one farm, here are your damages. In this case, we have a claim that was broken by Great American into one, and the panel awarded one. So, it doesn't make it nonsensical, because there are these kind of layers, and what happens is they can be collapsed together. I think what you said initially is that when they initially denied the claim, they broke it down or they lumped it into one claim. Did they do anything to lead the arbitrator to treat it as one claim? Did Great American, not to my recollection, no. However, when you're treating something as one claim for the purposes at the outset when you deny it, providing evidence for that one claim seems the logical way to approach it. So the evidence that was presented, I assume by you, was not on a county by county basis? It was not. It was simply, it was broken down between corn and soybean claims, and it was presented as the overall lump sum. And, in terms of the analysis on this, this is far from a non-definite, non-specific award. Both parties agree that this is simply a matter of going through, making these calculations, and you could break it out if you want. And that's why we're raising the issue of the court error in not either fixing the award if it thinks it's flawed. Except the regulation says that the arbitration panel's finding is nullified, right? So how can the district court go back and do it, even though it might be an easy thing to do? Doesn't the regulation say it's nullified? Well, in terms of that, I think you're getting into the area of, did they, I think you're getting into the assumption that the award doesn't comply, which we don't concede, obviously. But if it is a situation where the ... Well, if it did comply, there'd be no need to break it down. Obviously. And obviously, that's where we're coming from from the outset on this, is they broke it down into one, and that's a simple argument that I don't think would be in favor. In terms of saying this is not definite, they did break it down. They did say the basis for the award is broken down to all corn claims in Colt, Nottaway, and Ashton County. What the regulation doesn't say is you have to ascribe the damages specifically to the three counties. And I think what you're looking at is a worst-case scenario and error fact. Because let's say, for example, the arbitration panel awarded the $1.4 million on just one county and zero for the other two. Let me ask you, not knowing much about crop insurance, are the policies issued by county? So is there a separate policy for each county? Again, you're asking a harder question than you think. The way these policies were originally issued, as Justice Grass indicated, it can be by farm, and that's how they were originally issued. So there was like 55 of them. So if there's different policies, then there have to be different claims under each one, right? We're not talking about one policy that covers three counties. All of them are identical. But isn't it a separate? I've done a poor job of explaining this. What can be done is these individual units can be collapsed countywide, or as the great American did, statewide into one. Policy? Yes. Is that what happened here? Yes. Okay. You can start out with your 50, and if, for example, great American said you didn't keep adequate records, therefore we're going to collapse all of your claims into one claim and deny them. Well, no, no. Let's pretend there's not even a claim here. Pre-claim, we're issuing policies. You're going to pay some money. You're going to get some crop insurance. Do we have one policy that covers three counties, or do we have one, two, three policies each covering a county or some other system? You have some other system. You have a situation where these properties were originally insured on a per unit basis, and that is each individual farm. What happens, and this is done at the discretion of the company, is they have the right to collapse them from these 55, 60 separate units into one larger unit, and that's what was done here. And issue one policy. And it's, well, the policy is verbatim, you know. No, no. Come on. There's either one policy or there's one policy per unit. Which is it? There is one policy per unit. However. Then you have to have separate claims under each policy, right? No, sir. Because they were collapsed together. Only at the time that a claim was made. That's your argument. That's correct. I want to know. Take the claim out of it. Okay. Before there's ever a claim. One policy covering all the units, or one policy per unit? There's one policy per unit. Okay. That's what I needed to know. Okay. Counsel, is the reason for that to prevent a situation where a farmer doesn't keep good other. And so the insurance company says, we're just going to treat it as one to prevent inaccurate claims. That is one of the larger. Opposing counsel would be better to answer that question than representing the insured side.  That is. That is. There are other reasons on the consumer side, on the insured side. For example, there are, there may be certain fields that, you know, have much higher production and others that have lower production and decisions on policy. Without going too far down a rabbit hole. That is one. Mr. Ryan, you're into your rebuttal. If you'd like to reserve some. I would like to reserve the remainder, unless the court has any more questions. Very well. Thank you. Good afternoon, your honors. May it please the court. My name is Tom James. I'm here representing Great American Insurance Company. And with all due respect to my colleague, much of what he had to say about units is incorrect. I'll explain my presentation here. I'd like to take the panel through a few things here.      First of all, I'm not going to go into too much detail. I'm just going to say a few things. Crop 101, if we would, if that's helpful to the panel here. Some background on the dispute. Why this isn't a typical Federal Arbitration Act case, and that really doesn't decide the issues like it typically would with an arbitration. The problems with the award and discussion of award nullification and what that means under the Federal Crop Insurance Program's scheme that they've put in place, which does have a coherent design, although often it appears not, frankly, because it's a confusing program in many ways. So first of all, here the court's faced with an arbitration award that doesn't meet the minimum award specifications of the government-imposed arbitration requirement between the parties that binds them here. By the terms of that agreement, it's automatically rendered a nullity. The district court correctly determined that after taking a look at the issue. It determined the award doesn't bind them because the panel, the arbitrator panel, didn't do its job. And the parties have to start over from square one, as the court noted in its supplemental award after Mr. Russell moved for reconsideration as to that. This court should uphold the district court's decision. Now, how did we get here? Mr. Russell bought Federal Crop Insurance Policies, plural, from Great American Insurance Company. The policies are part of a federal program through which the policy terms are written and issued by the Federal Crop Insurance Corporation, which is a wholly owned government corporation empowered by Congress to issue crop insurance policies. It's managed by the USDA Risk Management Agency, and it's under the umbrella of USDA. This all goes back to the Federal Crop Insurance Act from the 1930s. It was a New Deal program of sorts. It's been in place ever since. Over the years, it's been privatized in terms of its delivery. In the 1980s and 1990s, the government shifted from issuing policies directly to contracting with private insurance companies known as approved insurance providers or AIPs for short, who are required to strictly follow the rules that the government sets in these policies and the loss adjustment procedures. The purpose is to promote the general welfare of agriculture in the country and to ensure consistent delivery of these benefits to farmers. The policy terms and the regulations related to them preempt contrary state law. They cut through traditional rules of insurance. Although this is called federal crop insurance, in many ways, it's not insurance. It's a benefit program for farmers delivered as an insurance policy through which the federal government typically subsidizes about half the premium each farmer pays and subsidizes the insurance companies participating in the program as well. There's a huge regulatory framework in place. Much of it is in 7 CFR Part 400. The policies that typically control are in 7 CFR Part 457. The policy terms are divided up into multiple sets of forms, which are, they turn into a telephone book worth of forms at times. The basic provisions generally provide the provisions that control. Those are about 36 pages, I think, during the timeframe of this claim. There are crop provisions, which are typically four to six pages. And then there are county-specific provisions and county-specific actuarial provisions that the government issues. Every policy is by county and crop. Policies don't cross county lines. So if I go to the government, I'm a farmer, and I've got farms in three counties, and I've got two different crops, and I want them both, all of those covered. Six policies. I'm going to get six different policies. Now, administratively, the company that issues them will group them together typically in a single set of forms and spell out the county under each policy. Some of the companies will even issue a unified policy number on the company's side as to that coverage. But the definition in the regulation that imposes the policy terms and in the policy terms makes it explicitly clear that each crop-county combination is a separate policy and is handled separately. In the unit collapse that is apparently an issue now in this case, which wasn't an issue in the arbitration, curiously, but the arbitrators seem to somehow raise it, the collapse that occurred was in one of the counties, one of the three covered counties as to the corns. There are three corn policies in which there were individual units covered, subdivisions of the county, in other words. And Mr. Russell, when he farmed, crossed section lines, the section township range lines that geographically divide this part of the country. Well, under the policy, you're not supposed to do that because individual units don't cross section lines. So the company collapsed is the term, the units, to convert it to what's known as an enterprise as a county-wide unit. That's the biggest kind of unit you can get. There's no such thing as a state-wide unit, nothing in the policy that provides for that because the policy limits it to a per-county basis. The largest you can get is enterprise. Within that enterprise unit and within that Exhibit K that Your Honor mentioned, which was provided to the district court, not the arbitration panel, if you take a look at that, I think it's A187, it's in the record, it's also attached to the plaintiff's brief, you'll see there are individual fields broken down in there, field is sort of a misnomer, but there are individual plots of land through which coverage is individualized even within the unit and within the enterprise unit. Because the way crop insurance works, at its core, a farmer builds up a history of production of a particular crop in a particular place, and that forms an average, a baseline, effectively. There's some math applied to that for coverage levels sometimes and other things, but basically that's the baseline, and that's where losses are measured against. So you've got your up to 10 years of history, if it gives you a number that's say 100 bushels per acre of something for a nice round number, and in that year you produce 90 bushels per acre, that 10 bushel gap is the loss. If you produce 110 bushels, on the other hand, you have no loss. Counsel, I understand that the policy expressly states that Great American has to settle claims on a unit basis, but I don't see anywhere that says you have to arbitrate on a per unit basis. Aren't you conflating two terms, units versus claims? Any disagreement that the policyholder has with any determination the company makes must go through arbitration. And the company determined that none of the claims under any of the units were payable, because it didn't believe that the losses were due to natural causes, if there were losses at all. The policies only cover specified perils, which are natural causes. The government and Congress in the Act said that it can't cover- Is there one denial or multiple denials? There was, I believe there's one denial letter, which covered all of the policies. If there's one denial, why couldn't they arbitrate one claim? It was all arbitrated together in one hearing, but the components of the program, those units and individual claims within it, are still how any losses have to be determined and paid. But again, that goes back to my question, the policy requires Great American to settle anything that says you have to arbitrate it on a per-unit basis. It says claim. Well, the arbitrator is required to apply the policy provisions and regulations and procedures of the Federal Crop Insurance Corporation in determining any loss, just like the company. So the arbitrator has to follow the same rules the company has to follow and can't deviate from them. No one is authorized to waive anything in the policy, including an arbitrator, and there's plenty of federal law on that. The policy makes that explicit in its preamble, 7 U.S.C. 1506L also notes that it preempts state law, which makes that term then enforceable as law in any dispute concerning the policy. Does that answer your question, though, Your Honor? I'm not sure if it does. I guess I'm still troubled about the distinction between units and claims, and especially in the arbitration context, as opposed to the claim settlement process. A claim has to be decided by unit, according to the policy definitions. So units are a subset of claims. Claims could be a subset of a policy because you could have multiple claims under a policy for a particular crop if multiple natural disasters occurred during the current season. Correct, but here we had one denial, so why is there not one claim being arbitrated? I think that's more a matter of semantics, perhaps. There was a single denial letter encompassing all claims under all units under the three foreign policies in those three counties. They were arbitrated together because it's just how it's typically done, frankly, and for reasons of efficiency and economy, it doesn't make sense to do otherwise. Mr. Russell farmed all of those operations together as well, but for insurance purposes under the rules the government set, they are compartmentalized by county and by unit. The unit in one of the counties having been collapsed into that massive enterprise unit, and in the other two counties I believe there were individual plots of land, although I don't think I'm wrong on that, so it was a single unit anyway. But to follow up, the arbitrators called it a claim. Semantics? I don't think they were defining anything. I mean, and I think we can say semantics, but you've also told us we have to really look carefully to these regulations and that you have to strictly adhere, so I'm not sure that the answer of semantics helps us a whole lot in just one category and not the other, right? I mean, so they're calling it a claim, and nobody said, no, we've got multiple claims. Well, Your Honor, there was not an objection or an opportunity to object to what the arbitrators decided as to that if the parties decided that mattered afterward anyway. They put it in the award that way. However, they don't have legal authority to interpret the policy or any defined term within it. And claim is a defined term, so they could call it Bob if they want. And you've talked about the policy. Do we have the policy? It's actually not in the record in its entirety. However, it is federal law because it is 7 CFR 457.8. That is the policy. It's the regulation. That is the policy. Yes. So it is law. The crop provisions are in another part of Part 457. There's nothing an issue from them, but they're in there as well, and I think we've cited in our brief what they found. Let me ask you, wasn't there an opportunity to object before the arbitration panel? In other words, didn't Mr. Ryan present a lump sum number? And shouldn't the argument have been made that you need to do it per unit? In fact, the argument was made that it needed to be done per unit. The arbitrators account for that a bit in their award when they note that there was testimony from an expert witness that Mr. Russell's side provided where he came up with his 1.433.08 million, whatever number he came up with. The arbitrator panel noted that Great American disagreed with that number and proposed that the panel issue an interim award instead, which is exactly what Great American proposed from the outset. These are complicated calculations that go into determining a crop insurance loss and getting it done correctly under the procedures. Great American's view was that number is wrong and nothing is due. To be due, the panel should enter an interim award, making those factual findings so that the parties could then run it through the system as required by FCIC to come up with what the correct numbers would be, compartmentalized by unit and even by individual line item within the units to present that to the panel as a final award, doing the math for them. That was very complicated math. And that is why that Exhibit K, I'm sorry, let me strike that, the parties also discussed this in their findings of fact that they proposed to the panel afterward. The panel said, no, we don't need to do the math. That guy said it's 1.433.08 million. We'll go with that number. That's what they did. So we did object. We did offer the opportunity to do math. We'll be able to find that in the record, your objection and offer to run the numbers and that kind of thing? It is noted in the district court's record. It's noted, I believe the district court discusses it in its brief as well. But the district court, as a matter of fact, did make findings in its decision on the motion to set aside the award. It found that the award did not contain the essential components it needed to contain. And I believe it found Great American objected as well. But in the arbitrator's award itself, the panel noted on, this is at A41, it's in their summary of the award, Section 5B, witness Miller testified that he calculated the indemnity to Russell at 1.433.08. Great American did not challenge the calculation or offer a different calculation. Instead, Great American requested that the panel, in the event of an award for claimant, enter only an interim award, which request is hereby denied. There was briefing, which actually made that a lot more explicit. I guess that's my question. Is that briefing available? Is that in the record? I don't recall that it is, your honor. I don't think we thought it was relevant for purposes of this appeal, so I don't think we factored it in there. The district court did see it, on the other hand, and factored it into its award, so it may be in the record as to that. Let me ask you, in the end, assuming there's liability here, is this just a waste of time to send it back and break down by unit? Or does this have some actual effect on what could happen? It does have an effect in many ways. Or is this just another bite at the apple in terms of we want to re-litigate liability? Well, it's not just that, but the fact that the arbitrators issued such a lengthy award making what seemed to be particular findings and didn't follow the rules in the end does call into question what they did, and that's part of the coherent scheme, as I described it, that FCIC has put in place as to arbitration. They require this arbitration process to resolve disputes. However, they also require that nobody waive the terms and everybody defer to their interpretations, and they say arbitrators can't interpret the policy. That also nullifies the award. That was something else before the district court decided it didn't have to decide. But they've issued a series of final agency determinations under their authority to issue what are known as FADs, colloquially, which bind everyone in the crop insurance program, and FCIC says they even bind courts as well and arbitrators. They've said arbitrators can't even decide things wrong. That seems a bit counter to what the FAA would typically say. You can't contest the underlying parts of what the arbitrator says, but in FAD 230, for example, which is in the record, they specifically say an arbitrator can't interpret it wrong, and if he or she does or they do, you've got to go back and fix it. And that's why they've set up this, I said it's insurance, but not insurance. It's also arbitration, but not arbitration in many ways because of the process they have set up, where they still keep their fingers controlling what's going on among the parties for these decisions. They don't want to have to decide it themselves. So like with the program itself, they've farmed it out to private arbitration, essentially, but all these rules still apply. And so this matters because they want to make sure that everybody follows all the program rules because there's subsidized government money at stake here. They've imposed these rules with this complex system. They're aware of the danger of inconsistent decisions from arbitrators and them not following the rules and just saying, looks like there's a big loss, let's pay the guy something. They want all the I's dotted and the T's crossed here because of that. They substantially revised the policy terms to put in this current arbitration provision back in the terms effective in 2005, and in the regulatory comment as to that, which I don't think is in the record, but they noted to their horror, arbitrators weren't following the rules. They decided they had to do something. That turned into a very, very long arbitration clause in the policy, which is sort of arbitration and sort of not. They've limited the liability as to what arbitrators can award or even courts can award if a company makes an error in the policy, unless it's essentially intentional and causes the policy holder to lose something he's otherwise entitled to. No one can get damages from a company. They can't get attorney's fees from a company. It's part of the bargain for getting half your insurance premium paid by Uncle Sam. You've got to follow all these rules. And so, yes, we have to go back and start from square one because the panel did it wrong. It may be indicative of them not following other processes correctly either. There are other problems with the award that Great American raised with the district court concerning interpretations they made as well. And if the panel were, in fact, to overturn the district court's decision here as to the content it needed for being a nullity, we still have that interpretation issue to resolve with the district court. So I assume it would have to go back to the district court for that to be resolved as well. And that's a second nullification factor from an independent clause in the policy as to that. So that's where we'd end up. Did that answer your question, Your Honor, by the way? No? Okay. There are other problems with the award, as I noted. There's the interpretation problem, too. That's not before you now. Great American did raise some arguments relating to interpretations in its brief, on the other hand, which Mr. Russell's counsel criticized in their reply. But the reason being is interpretations matter even as to the things before you now because of the existing interpretations FCIC has made, such as FAD 230, which I mentioned earlier. That's the reason that's in there. The calculations that Mr. Russell intends in his brief are easily done where you just run the numbers per field, by the way. If you on the panel would take a look at the different factors in the record, there's that There's also A88 and A89, which are calculations Mr. Russell's counsel provided at the district court in a brief. Both of those are attached to their brief. Let me ask you about that. Exhibit K is in our record. The arbitration panel referenced all three counties, so obviously they had something. What did they have? They had testimony from Ron Miller, with two I's, who provided those numbers and said he had done the calculations, but he presented no documents, no individual breakdowns or anything of the sort to the panel, and none of that was taken into the record. And if you look at the numbers provided by the two parties to the district court, they're different. And they're both different from the number the arbitration panel came up with. There's about $8,000 worth of swing between Great American's number, based on its rough calculations, the plaintiff's number, and the panel's number, which is in the middle. I don't know how the panel got its number. There's no way to back figure that to fit in the boxes of the units and the yields per line item in the unit and so forth. So you can't just run the numbers. It's just not that simple. Nullification is self-executing under the policy. It's not something a court needs to do. It's something FCIC imposed. Am I out of time? You're holding up the yellow sheet. You have seven seconds. Oh, thank you. Okay. Nullification, no self-executing. I'll just point that out to the panel. It's automatic under the program. It's part of the design FCIC put in place, and the district court correctly decided that. This panel should honor it. Thank you very much, Your Honor. Thank you, Mr. James. I appreciate the opportunity to be here. Rebuttal? Thank you. Four minutes and 43 seconds. Thank you. Mr. Wrenn, let me ask you a preliminary question. I'd like you to address the issue of whether Great American waived its position by not raising its argument within the time frame allowed under the AAA. I'm going to have to ask you to specify which argument, damages? Well, they said the arbitration panel didn't properly set forth the reasoning by claim, but discuss the timing of that and when it was raised and whether it was waived. Well, one, I don't think they raised it any time until when they brought it up in front of the district court, but I think what's particularly telling about that is that in terms of these arguments, they didn't present any evidence to put the panel in another place in terms of the damage aspect. And there's a couple of things I'd like to address. Your Honor, you said, you know, well, assuming liability. We don't have to assume liability. That is not a disputed fact. There was absolutely a finding of fact that there was, you know, an insurable loss caused his claims for his corn crops in the three count. And when you look at what the requirement is, it says the amount, basis for the award and a breakdown by claim. Well, the amount is $1.433 million. The basis for the award is the insurable loss shown on all of his corn. And the breakdown by claim is all corn crops in these three counties. Now that's a very reasonable interpretation of what is required there. And it's met. There is no authority that great American can point to that says what panel here did here does not comply with that regulation. There is nothing that says you can't say we find for the plaintiff on these individual claims. See, aren't you making it's the second time you've used the plural claims. So if it has to be broken down by claim, doesn't and there's plural claims. Why doesn't it have to be broken down at least more than one? Well, I'm arguing that if that is the case, that yes, you, it was met here. No, you said there were claims, right? That I guess that is a great American that this needed to be broken down among the three counties. Yeah. But when you were doing your summary, you said there were claims and you didn't say that's their argument. You said there were claims and if it's going to be broken down by claims, there has to be more than one, right? Yes, there does. OK, here we got one number. We didn't get a breakdown by claims. There is nothing that requires you to break the damages down by blame. It's I thought the CFR provision specifically required that the exact wording of it says you have to provide a written ruling that provides the amount, the basis for the award and a breakdown by claim. Well, that's the exact words breakdown by claim. And that was done here in terms of all corn claims and Holt, Nottoway and Atchison County. There's no requirement that the damages need to be separated out amongst those three. Um, in terms of the the. Issue of the the no objection, there was no alternative evidence provided by Great American guarding these things, there was no objection to the courts or excuse me, the proposed they issue an interim award and allow the panel to receive more evidence. However, there was never an objection to the the. Panels ruling that, no, we're not going to was it was it clear that that offer give us an interim award and we will then. Break it down by unit, was that pretty clear that that was what they intended to do? They are that they offered the Great American Great American requested panel keep the matter open for more evidence. Well, OK, but to do an interim award and then what what was the purpose of that? Well, what did they offer to do then? They offered to calculate the damages and by unit. To be honest, your honor, I don't recall if that was I, I don't recall. OK, well, let's assume that they did that. Sure. Wouldn't that be enough to put the panel on notice that it needed to be done by unit and the panel just disregarded that? Well, the panel immediately said, counsel, we think we can we can award damage. And there was no objection or follow up. I agree, so I I would be reluctant to say that that does. But. Time is over, unless there's any other questions, thank you very much, counsel, we appreciate both of your arguments. Interesting case, we'll wrestle with it and issue an opinion in due course.